Beverly Martin and Judge Jill Pryor and I are delighted to have with us this morning Judge Mike Malloy from the Eighth Circuit. We were reminiscing this morning, he has been a federal judge for many years, first as a bankruptcy judge and then on the district court and he and I, I know him I guess I should say by virtue of some of his good work for the federal courts nationally. So it is such a pleasure to have you. Thank you for coming from Cedar Rapids. Thank you. I am glad to be here. All right. I think you all are familiar with our lighting system, it is traffic signals. So when the red light comes up, we would ask you to wind up your arguments. With that, we are ready to get underway with the first case, Bamberger Rosenheim v. OA Development. Your Honors, may it please the Court, my name is Greg Hecht with John Jordan and our clients L. Rosenheim and Ronan Setty, attorney from Israel and our client from Israel with Bamberger Rosenheim. Your Honors, OAD manufactured venue, proximate cause and damages by taking $300,000 off the closing table to ensure that we would have to sue an arbitration in Atlanta and then later confessed to judgment before the trial. In fact, they voided the bargain for forum selection clause and gained a million dollar judgment as a result. Our clients bargained for this clause and raised $20 million for OAD projects on the basis of it and were denied the benefit of the bargain. Now OAD is setting an international blueprint on how to manipulate these types of clauses in the busiest airport in the world area. Forum selection . . . Didn't you all agree to have the tribunal determine the arbitrability of the counter claim? Your Honor, what we did is we agreed in the first instance for review subject to the FAA and New York Convention rights. In fact, the issue, the waiver that is brought up by the other side was never brought up in their district court brief. If you look at it, you won't see waiver of judicial review. I'm looking at the order, the preliminary order, terms of reference and case management filed in the district court in March of 2016. Page 3 says during the conference, counsel for each of the parties stipulated that the tribunal has jurisdiction to determine the arbitrability of the OAD counter claim. Yes, ma'am. Your Honor, what we did do was we admitted that they would have initial jurisdiction subject to FAA and New York Convention review rights. In fact, Your Honor, we made it very clear in our answer to their counter claims as follows. We said in the July 11, 2014 response to their counter claims, PROFIMX Appendix Volume 2 of 5, Document 1-4, PROFIMX asserts that there is no jurisdiction for the arbitrator in this arbitration to decide OAD's counter claims. To the extent that the ICC or the arbitrator determine that the counter claim shall proceed as part of this arbitration, PROFIMX preserves the following defenses including ninth defense, the ICC lacks jurisdiction to consider the respondent's counter claim. Tenth defense, venue in Atlanta, Georgia is only proper for PROFIMX's claims and improper for consideration of the counter claim. In fact, the district court did not even recognize the waiver issue as an argument that was brought forward. It is new and foreclosed because they knew that we were going to come forward with judicial review. In fact, they never brought up a telephonic hearing in the district court. We would have developed an entirely different record with affidavits and depositions. We might have even asked the arbitrator to testify, but he didn't. Certainly there's no clear and unmistakable waiver as Halson versus Dean Witter, a case OAD states and the third restatement of U.S. law in the International Commission on Arbitration Section 2-8 says that you should put the terms in, we foreclose judicial review. You are not required, as you note, by the court case of China Min Metals Materials Imports and Export Limited, 334F 3rd, 274 3rd Circuit 2003 case that says we are not required to bring a separate action. We do not have to waste the resources of having an independent U.S. district court. We can end up having an initial arbitration decision by the forum selection by the arbitrator himself and we can have judicial review. Let me ask you a slightly different question. You agree that the defamation counterclaim belongs in arbitration as opposed to court, is that right? Your Honor, what we agree, Your Honor, yes, we agree. I understand that there's an issue about where it should be heard, but you agree that it's arbitrable, the counterclaim, correct? Your Honor, yes, but, and my but is if you look at the forum selection clause, it has a qualifying clause. In other words, it says if, in fact, it specifically says, basically, if you submit a claim by OAD, if OAD submits a dispute, then it qualifies for arbitration in Tel Aviv. Similarly, if PROFIMEX submits a dispute, it qualifies for arbitration in Atlanta and it has that qualifying language for arbitrability. Without it, they don't get arbitration. And forum selection clauses in international cases are absolutely critical because the arbitrator should not be able to pick himself what he gets to do. If you look at the prior panel's ruling in Sutz v. Dean Witter of this particular circuit, the 11th Circuit said, the specific provisions in the arbitration provision take precedence and the arbitration rules are incorporated only to the extent they do not conflict with the express provisions of the arbitration agreement. What our arbitrator did is he repealed and replaced the provision that said these disputes must go to Tel Aviv if they are submitted by OAD. He did exactly what the Sutz court said you cannot do. And in the international ICC case, Shirk v. Alberta, Canada, they said in the U.S. Supreme Court that forum selection clauses are indispensable to the predictability in our national business transactions and are critical to prevent the destructive jockeying of parties to prevent justice and to take tactical advantage. In Bremen v. Zapata, they said that these are indispensable elements in international trade and commerce. In Polamaster, the only case that is cited with regard to a forum selection clause that the district court did not mention, did not mention Shirk, did not mention Bremen v. Zapata, they use the exact same arguments that OAD mentioned, which is they said that counterclaims are part of the same dispute. What the case said in Polamaster is that any dispute would be subject to, basically subject to arbitration in California or in Belarus, depending on who brought it. They separated it saying that counterclaims and claims are different. In fact, according to… Of course, Polamaster is not binding on us. It's a Ninth Circuit opinion. And I looked at it pretty closely. And I understand it ruled on the venue question the way you want us to. But it did so without very much discussion. What is the discussion from Polamaster that you think ought to guide our decision here? Well, Your Honor, it says, in the Ninth Circuit says counterclaims are separate claims independent of the plaintiff's underlying claim. They say that a counterclaim is in effect a new suit and said there is no reason why the arbitration agreement had to provide for the treatment of counterclaims to conclude that arbitration clause is ambiguous on this basis sets up a rigged game. Just like this court had said in Sterling Financial v. Hyde. So what do you do with the fact that the Supreme Court, I mean, Polamaster precedes the Supreme Court decision in Oxford Health Plans v. Sutter? I'm glad you brought that up, Your Honor.  And in those particular cases in Stolt-Neeson, the court reversed the arbitrator saying he had no power to entertain class arbitration. When you got to Oxford, Oxford said Stolt-Neeson is still good law and says if there's not a contractual basis for the arbitrator to conclude that the forum selection is appropriate in this particular area, you overrule it and you follow Stolt-Neeson. This is a Stolt-Neeson case where the contract has no opportunity or basis to be depended upon because, and there's no ambiguity to the clause whatsoever. I would also ask the court to see . . . Well, it doesn't talk about counterclaims, right? No, it talks about class arbitration, which is . . . Well, but it . . . I mean, what you're fussing about is there are counterclaims being heard in Atlanta as opposed to Tel Aviv. So we start with your agreement doesn't mention counterclaims, right? It says if OAD brings a dispute, it has to be brought in Tel Aviv. So that would be a yes? It doesn't mention counterclaims? It doesn't mention counterclaims. It has no allowance for counterclaims. It is exclusive. It says it basically has no exception whatsoever. But you . . . It's plain and unambiguous. The second question is the International Chamber of Commerce rules is what governs the agreement by your agreement, right? Your Honor, to the extent as such, as this prior panel said, as a prior panel said, to the extent that the ICC rules do not conflict with the agreement, yes. But when they do . . . Oh, so your position is the ICC conflicts with your agreement? The ICC rules to the extent if they were incorporated and tried to be used by OAD or the arbitrator, to the extent they conflict, they are not honored. What is honored is the . . . I'm asking you, is it your position that they do conflict in this case? Yes, Your Honor, they do conflict in this case. Why is that? Your Honor, I think because what they're saying is you can bring counterclaims as a result of the ICC rules is their particular . . . But you don't object to their ability to bring a counterclaim as I understand it. To bring any claim, any dispute has to be in Tel Aviv. That's how they qualify for arbitration, whether it's a claim or a counterclaim. That's what we believe the reading of Polemaster and Sutz is. In addition, Your Honor, we believe that's also the Sterling v. Hammer conclusion as well. In Sterling v. Hammer, Your Honor, this particular court said that after they tried to include the NASD rules into the contract, they said Hammer points to the NASD rules and says it's for the arbitrator to decide where the arbitration is located. But the arbitration agreement said it had to go to Boca Raton, Florida. And the Eleventh Circuit Court of Appeals held a federal district court has jurisdiction to enforce a forum selection clause in a valid arbitration agreement that has been disregarded by the arbitrators. Right, but in that case, the parties agreed about what the forum selection clause required and the court simply ignored it. Isn't that what happened in Sterling? Well, in . . . In other words, the court didn't interpret the clause at all. We believe that this particular arbitrator did not interpret the clause at all. He used two paragraphs, paragraph 38 and duplicate paragraph 38. Paragraph 38 says you didn't affirmatively negate counterclaims, even though it says all disputes have to be tried in Tel Aviv. And second, he says I incorporate the ICC rules, which repeals and replaces what the arbitration clause says. Similarly, Your Honor, if you look at what they did in Sterling, they tried to refer to the NASD rules and the district court said that's incorrect and the Eleventh Circuit upheld it. Your Honor, we would also state to you that substantive arbitrability is an important issue in terms of who should decide this. If you look at the Cargill case, one of the questions, and in Grigsby 2, which Your Honor, Judge Pryor incorporated Grigsby 1 in and talked about waiver. In that particular case, what they said was be careful of issues that might end up being the gateway, not being able to be, should be determined ultimately by the court. And they talked about forum shopping being a critical issue that should be determined by a court as opposed to an arbitrator. An arbitrator in our case, consciously or subconsciously, is paid by the claim, paid by the hour, should not be the ultimate decider on his own jurisdiction, which is what the Cargill case said as well. Lastly, we rely on our brief with regard to Mr. Gorin and the fact that they gave us unidentified witnesses to determine their proximate cause and damages. We were denied the right to confront by presenting any affidavits, depositions, or witnesses in response and denied a meaningful opportunity to present that evidence. Twelve minutes goes by fast. We would ask them to stop the manufacturing of venue and the manufacturing of proximate cause and give in the interest of justice what the court says in Shirk and Bremen and agree to forum selection clauses within their own agreement. Thank you. May it please the court. Good morning. My name is Simon Bloom. I'm joined with my partner, Troy Covington. It's our pleasure to represent OAD, the appellees in the case. The court is identified through its questions. The core issues that are to be discussed today and I think is absolutely on the right track. The question, the threshold question is a question of deference. Is this court going to pay deference to an arbitral decision regarding forum selection or not? The court's Where the parties agreed for the arbitrator to decide arbitrability. Yes, ma'am. That's simply an additional reason and I would say the first reason why the parties, why the court must defer to what the arbitrator said about venue. Let me ask you this. Yes, sir. Should we be concerned at all, and I assume your answer will be no, but as to the issue of that you manufactured a dispute so that you could get arbitration in Atlanta. That you withheld money and then once you got the arbitration started, confessed judgment and in effect, did an end round around the arbitration clause. The answer is no. You should not be concerned. I wish I were that clever is the second part of that answer. And the third part of that answer is the parties contractually agreed to have a dispute submitted by one party or the other heard in the other party's forum. That's what the parties unambiguously, unequivocally agreed to in the solicitation agreement. That means what it says. At the time to point to remind the court at the time that the demand for arbitration was filed in this case, these parties were in a blood feud like the Hatfields and McCoy's. There was not just the one narrow issue regarding, as your honor points out, regarding a commission or disposition fee. They were fighting about forensic audits and improper budgets and accusing each other of being liars, thieves and crooks. Well, those accusations actually only went one way. There were accusations and allegations about defamation. This was a bubbling over feud that the demand for arbitration goes to great detail and great lengths to set out the demand for arbitration could have been just like your honor points out and said you were supposed to do X. You didn't do X. Therefore, we win. We demand arbitration. It didn't do that. Paragraphs 47 and 48 even try to preterm it. Our defamation claims or counterclaims by saying all the things that we said about OAD were true and were privileged. It looks like your honor has a question. Well, just to follow up on Judge Malloy's question, I mean, at the end of the day, you withheld money to Paul Profimax that you knew that you owed them. And, you know, they say, well, that was all set up to manufacture this venue. I mean, what's your answer to that? I respectfully disagree with the predicate premise of that question. We did not know that we owed them anything. It turned out over the course of the litigation that for one type of fee, we conceded that type of fee was, in fact, owed. But for the other type of fee, we litigated hard. And this is where things get a little bit confused. There was a promote and a disposition fee. For one type of fee, we litigated hard for months that that fee was not due in owing to Profimax. So this whole idea that we sat back in a sinister lair and conceived of manufacturing a venue simply doesn't hold water. There was vigorous litigation over the entitlement to that fee. But by the time, and to Your Honor, Judge Martin's question again, these parties in the middle of this litigation said, arbitrator, you decide the forum. We both consented. And I keep hearing this reference to the fact that this is being raised the first time. I would refer the court to our brief at the trial court level on page six, docket number 16, where we make this exact argument grounded in Oxford. And we started this discussion, Judge Martin, with this premise, which is if the parties agree to have the arbitrator decide the forum, they're stuck with it. Now, in this world, you're never stuck with anything. You can always go to someone to get a kind ear to hear you. And they could have done that. So at the beginning, they said, Kendrick, you decide forum. If they didn't like that decision, they could have immediately run down the street to the Russell Building and asked a judge to say, Kendrick got it wrong. But they waived that opportunity and went forward and tried the case with thousands of pages of documents and dozens of depositions and hundreds of thousands of dollars spent. And then in the end, now they don't like the decision, just like in Polymaster, when they got popped with a $2.5 million judgment, and they said, we need to find any error that we can to try and stuff into a convention defense or an FAA defense. And that's the manufacturing that's going on here, Judge Malloy, manufacturing basically a defense contemplated by either the convention or the FAA, which is really just a list of errors that they seek to appeal. And the courts, this court in particular, has repeatedly said that the limited review that you are to offer an arbitrator's decision is so narrow. It's so narrow. And it's designed that way because there is a public policy in this country and in the alternative dispute resolution. And so the only way that you get to appeal errors is if you don't go to arbitration. You're giving up those additional due process rights when you contract to have your disputes heard in an arbitral forum, which is what happened here. So the first question is deference. We submit that both for the Oxford reason that the parties agreed to have the arbitrator decide the forum, as well as the Howsam doctrine, which looks at the substantive versus procedural arbitrability questions. And it makes a decision. It says, is this substantive, which is to your Honor, Judge Pryor's question, is this whether you arbitrate, that's substantive, or is this where you arbitrate? And all of the courts to address this, all of the circuit courts say the where question is a procedural question. The where question is a question that is answered exclusively by the arbitrator. The where question is not a question that can be reviewed with this open field approach like Polymaster did. How do you respond to your colleague's argument about the word qualified, that the dispute is only qualified for arbitration in that venue? Well, Your Honor, the language of the arbitration provision that I'm reading does not use the word qualified. The language says any such proceedings shall take place in Tel Aviv, Israel in the event the dispute is submitted by OAD, and in Atlanta, Georgia in the event the dispute is submitted by PROFIMEX. There's no qualified language there. The bottom line is, if they submit the dispute, they've got to do it here. If we submit the dispute, we've got to do it there. It's not terribly complicated. There's no qualifications that govern here, Your Honor. The issue is whether we, we being the royal you, have the ability to open the issue again and decide it de novo as if you were hearing it for the first time. And the resounding message from the four other circuits that have addressed this question head on and the U.S. Supreme Court is that maximum, I call it super deference, must be given to the arbitrator's decision that arbitration was appropriate here in Atlanta for the counterclaims. And one of your honors pointed this out. Arbitrator Kendrick went through the very same process that this court condoned and, in fact, regaled in in Southern Communications. The court said, you did what every one of us would have done, that arbitrator did. You looked at the provision. He looks at the provision. He interprets the plain meaning of the provision. He says that there's no, there's no language regarding a prohibition on counterclaims. Then he goes to see what rules were adopted. Well, the parties adopted the ICC rules. He looks in the ICC rules. He goes to Rule 5, Section 5, and the rule says that not only may you bring counterclaims in an arbitration under the ICC, but you must bring those counterclaims or else they are waived, just like the compulsory counterclaim rule. It goes a step further and it says under Rule 18 of the ICC that the forum question is one to be cited by the arbitrator. So here's another reflection of the party's intent. The parties adopted the ICC rules and one of the ICC rules says, arbitrator, you make a call on forum. So there's an additional reason, and we shouldn't need to go this deep, but all these were arguments and set forth in the briefing, so I'll go. He says the ICC rules conflict with the party's agreement. Yeah, I was, I followed, I tried to follow that dialogue, Your Honor. I'm not sure that I did, and I'm not sure that I ever got the answer. I don't think he likes the ICC rules in terms of what Section 5, Subsection 5 says and in terms of what Rule 18 says, but how can they conflict when the very solicitation agreement that is the subject of the case expressly adopts and incorporates the ICC rules? There's nothing else in the solicitation agreement about counterclaims, so where's the conflict? There's silence in the solicitation agreement and there is a rule in the ICC. There is no conflict, Your Honor, and I think that that dialogue, the struggle dialogue was in fact best evidence of that. Does it make a difference if it's a permissive versus compulsory counterclaim? No, sir, it doesn't. I think that's a fair question, but no, it doesn't. I think it just goes a step further that it says it is compulsory. No, it permits those counterclaims to be heard. Well, if it wasn't compulsory, what if PROMEX had gone ahead and filed a lawsuit in the district court in Atlanta because that's where they would have venue, and then you said, well, you have to arbitrate that. Would you have been able to bring it into this arbitration proceeding or would you have to start a separate one? Oh, I think that the answer is we would not have had to start a separate one. We would have filed a motion to compel arbitration in the Russell Building. You would have asked that judge to compel arbitration based upon the arbitration provision. The form would have been Atlanta and the dispute would then have to be. If it wasn't a compulsory counterclaim, why would the form then necessarily be Atlanta since the form selection clause said Israel? Well, because they would have been submitting the dispute. If they had filed suit, I think I understood your question, Your Honor, but if they had filed suit in Atlanta as the plaintiff, they would be, quote unquote, submitting the dispute and therefore it would have to have been in Atlanta. Now, what happened after that in terms of clauses of action, counterclaims and whatnot tag along with? Because I think procedurally what would have happened was the judge would have said, yes, you're right. The solicitation agreement says you've got to arbitrate. This is the weather question. Yes, you must arbitrate. That is a substantive arbitrability question. Go over to the ICC office and file your arbitration. The plaintiff, if they wanted to continue to pursue the action, in this case, Profimax, would have had to have gone and submitted the dispute to arbitration here in Atlanta. And then we'd be right back where we were. So I don't know that I see the distinction and I might be missing something in your question, Judge, but I don't see that there's any material impact of whether it was a counterclaim, compulsory or permissive. If you get past the deference question, and I think that we all, it's very easy to get past the deference question and check the box, yes, and you get super deference. I don't want to spend much of the court's time going through the legions of cases that talk about, and in this circuit talk about, the great deference that one is to pay towards the arbitrator for its decisions, whether those decisions are procedural in nature, whether they're legal questions that are decided, or whether they're factual determinations. That is the highest level of deference that is to be given. In fact, there's language that's known to law. So that's why I call it super deference. I don't think that the tale of Etai Gorin, the evidentiary issue, should wag this dog, but I'll spend a minute on it. The bottom line is, once you agree to arbitrate, you have given up the full panoply of due process protections that we all would have if this were a standard federal court action that was filed in the district court. You sign those away. You sign those away because of any number of considerations. You think it might be more efficient. You think it might be quicker. You think it might be less expensive. Those things happen to not turn out to be true all the time. But in the end, you think it's a better forum for you to have someone that is not 12 and the box in downtown Atlanta or in Gainesville or wherever trying to make a decision about interpreting a solicitation agreement in an international business relationship. That's the quid pro quo. Once you do that, you're stuck with the arbitrator and the arbitrator's decisions. And back to Judge Martin, full circle, you not only did it once when you signed up for arbitration, you did it again when you allowed the arbitrator to make the forum decision. And you did it yet again by going to trial. The due process protections in an arbitration do not get into the minutiae about whether balls and strikes were properly called, whether this document came in or hearsay was not allowed in. That's not the way the case law is set up. The cases in this circuit are definitive on this question, that if super deference is given to the questions of procedural arbitrability, super duper deference, I know these are technical terms, super duper deference goes when it comes to calling balls and strikes at an arbitration hearing. Judges and arbitrators don't even have to have live testimony. They don't have to allow cross-examination. They don't have to allow discovery. They don't have to allow any of it. Arbitrations can be conducted by briefing by both sides, affidavits by both sides, and a 30-minute hearing. So to argue that there was some fundamental fairness impairment by the fact that Etai Gorin didn't give them the answers that they wanted in the deposition simply doesn't even rise to the lowest level of consideration. I thank the court for its time. I want to close by saying this. If arbitration and the policy behind it is to mean anything, then we must be reminded of Justice Kagan in the Oxford Health case when she said that limited judicial review maintains arbitration's essential virtue of resolving disputes straight away. Well, this was not and has not necessarily been resolved straight away. We're in year three of this saga. She goes on to write, if parties could take full-bore legal and evidentiary appeals, arbitration would become merely a prelude to a more cumbersome and time-consuming judicial review process. Well, welcome to the show. We're in the midst of a more cumbersome and more time-consuming judicial review process because they simply didn't like the result. Thank you very much. Thank you. Your Honors, OAD is trying to substitute its interpretation for what the arbitrator did, which was not interpret, but substitute, repealed, and replaced. When they talk about the manufacturing of venue, they talk about this other $96,000 disposition fee. But in our particular case, the unrebutted testimony that was in the brief said we would have never brought the international arbitration or that claim because it wouldn't have been cost-effective. They are deterring arbitration by ignoring the clear and unambiguous language that is the essence of the contract. If a counterclaim is a dispute, if you say a counterclaim is a dispute, it has to go to Tel Aviv. And the whole essence of the contract, which the 11th Circuit, the U.S. Supreme Court, Schert, Zapata, as well as Polemaster suggest, is you have to honor that and the intent of the parties. The arbitrator does not get his power to, he doesn't, the language they look at through their brief that says you favor arbitration, do what the arbitration says, ignores the fundamental preceding value that the arbitrator only gets his power from the agreement itself. And it is very important to honor the party's intent and the essence of the agreement, which is why they have two separate cities, Tel Aviv and Atlanta, so that they can defend in the home site. And that is why the U.S. Supreme Court said it was so important to honor that international selection. PROFIMAX did submit disputes related to defamation. As a result, they should go to Israel. Doesn't your interpretation depend on this being two different disputes, defamation, and then the contract issues? Your Honor, any dispute that is brought by PROFIMAX, whether it's a, I mean, by OAD, if it is a tort defamation case, it has to go to Oxford. But why is it not one big dispute arising out of the same set of facts and circumstances? Sure, but the arbitrator didn't make that kind of interpretation. He didn't go into a long arbitral issue about how the dispute was. He didn't do what the Oxford arbitrator did. He said, it doesn't affirmatively negate this. And they said, they admitted that they submitted this dispute. But if you look at our August 12, 2014 reply to the arbitrator that's in the record, it has a whole section of how these disputes are different. And it has a whole section saying these are different disputes. He doesn't interpret disputes anywhere. Please look at paragraphs 38, 38, which are duplicate, and 37. You'll also note at the time the arbitrator made his decision, there were only five defamation counterclaims. We filed a reply after that that said, and the terms of reference were set. Those five counterclaims, we defeated all at the final award. He then, we brought a motion to amend the terms of reference as well as an objection to them in February of 2015, bringing additional counterclaims, and said we would never agree even to initial jurisdiction over these additional 60 or so claims. That was never dealt with. That was denied and certainly is preserved here. We would ask you not to allow the international jockeying for securing tactical advantage, which the U.S. Supreme Court has said don't allow. Honor the intent of the parties. It honors justice, international trade, and commerce. Thank you for the opportunity to present in front of this court. Thank you. Next, we'll hear the case of ZPR.